UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
WINDWARD BORA LLC,

                        Plaintiff,

        v.

ALJO DURKOVIC *as Trustee of the McQueen Family Trust*, ROBERT MCQUEEN, RHONDA MCQUEEN, and WELLCORP, INC.,

                        Defendants.
--------------------------------------------------------------

**MEMORANDUM & ORDER**
22-CV-411 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Windward Bora LLC commenced the above-captioned action against Defendants Aljo Durkovic as trustee of the McQueen Family Trust, Robert McQueen, Rhonda McQueen, and Wellcorp, Inc. on January 25, 2022, seeking to foreclose on a mortgage encumbering a property located at 1460 Forest Avenue, Baldwin, New York (the "Property") under New York Real Property Actions and Proceedings Law ("RPAPL") §§ 1301 *et seq*. (Compl., Docket Entry No. 1.)  Plaintiff filed an Amended Complaint on January 23, 2023.[1] (Am. Compl., Docket Entry No. 26.)  Defendants failed to answer the Amended Complaint or otherwise respond to this action.  (*See* Pl.'s Request for Clerk's Entry of Default, Docket Entry No. 12.)  On August 22, 2023, the Clerk of Court entered default against Defendants.  (Clerk's Entry of Default, Docket Entry No. 36.)  On September 12, 2023, Plaintiff moved for a default

---

[1]  Plaintiff moved for a default judgment after Defendants failed to appear or respond to the Complaint.  (Pl.'s Mot. for Default J., Docket Entry No. 17.)  The Court denied the motion on December 29, 2022 ("December 2022 Order"), but granted Plaintiff leave to amend the Complaint.  (Dec. 2022 Order, Docket Entry No. 24.)

judgment.  (Pl.'s Mot. for Default J. ("Pl.'s Mot."), Docket Entry No. 37; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 37-2.)

For the reasons set forth below, the Court grants Plaintiff's motion for default judgment.

## I.   Background

### a.   Factual background

On June 16, 2005, Robert McQueen executed a note for a $165,000 home equity line of credit, plus interest at a monthly variable rate, from National City Bank secured by the Property (the "Note").  (Am. Compl. ¶ 11; Note 10–17, annexed to Am. Compl. as Ex. C, Docket Entry No. 26-1.)[2]  The same day, Robert McQueen and Rhonda McQueen (the "Borrowers") executed a mortgage on the Property (the "Mortgage").  (Am. Compl. ¶¶ 10–11; Mortgage 3–9, annexed to Am. Compl. as Ex. B, Docket Entry No. 26-1.)  On June 21, 2007,[3] the Nassau County Clerk's office recorded the Mortgage.[4]  (Am. Compl. ¶ 10; Mortgage 4.)  On March 24, 2011,

---

[2]  Because the exhibits annexed to the Amended Complaint are not internally paginated, the Court refers to the page numbers assigned by the electronic filing system.

[3]  Although Plaintiff states the Mortgage was recorded on July 21, 2007, (Am. Compl. ¶ 10), the Nassau County Clerk's Endorsement Cover Page attached to the Mortgage indicates a "[r]ecorded [d]ate" of June 21, 2007, (Mortgage).

[4]  On February 25, 2009, U.S. Bank National Association, as successor by assignment to Downey Savings and Loan Association, brought an action against the Borrowers and National City Bank to foreclose on the Property based on a separate $345,000 promissory note and mortgage executed on June 3, 2005.  *See U.S. Bank Nat'l Ass'n v. McQueen*, 133 N.Y.S.3d 842, 843 (App. Div. 2020); *U.S. Bank Nat'l Ass'n v. McQueen*, 201 N.Y.S.3d 149, 150 (App. Div. 2023); *U.S. Bank Nat'l Ass'n v. McQueen*, No. 3491/2009 (N.Y. Sup. Ct. Nassau Cnty.). Because the prior state court action involved a different mortgage, it does not bar the Court from exercising jurisdiction over Plaintiff's claims in this action.  *See Courchevel 1850 LLC v. 464 Ovington  LLC*, No. 16-CV-7185, 2019 WL 1492347, at *3 (E.D.N.Y. Mar. 31, 2019) (explaining that "simultaneous foreclosure proceedings involving the same property but different mortgages are not problematic"); *see also Cent. Tr. Co. v. Dann*, 85 N.Y.2d 767, 771–72 (1995) (concluding that a senior mortgagee's foreclosure action did not bar a junior mortgagee from

the Borrowers transferred the Property to Aljo Durkovic as Trustee of the McQueen Family

Trust.  (*See* Bargain & Sale Deed ("Deed") 42–45, annexed to Am. Compl. as Ex. F, Docket

Entry No. 26-1; *see also* Am. Compl. ¶ 3.)  On April 15, 2013, a judgment in favor of Wellcorp,

Inc. ("Wellcorp") against Robert McQueen in the amount of $4,232.16 was recorded in the

Nassau County Clerk's Office.  (*See* Tr. of Judgment 47, annexed to Am. Compl. as Ex. G,

Docket Entry No. 26-1; *see also* Am. Compl. ¶ 6.)  On May 11, 2013, PNC Bank, the successor

by merger to National City Bank, assigned the Mortgage to Keyhole Capital – Fund V ("Keyhole

Capital").  (Am. Compl. ¶ 12.)  The Nassau County Clerk's Office recorded the assignment of

the Mortgage to Keyhole Capital on September 26, 2013.  (*Id.*; *see also* Assignments of Mortg.

("Mortgage Assignments") 18–23, annexed to Am. Compl. as Ex. D, Docket Entry No. 26-1.)

On July 19, 2021, Keyhole Capital assigned the Mortgage to Plaintiff.  (Am. Compl.

¶ 12; Mortgage Assignments 22.)  The Nassau County Clerk's Office recorded the assignment of

the Mortgage to Plaintiff on August 26, 2021.  (Am. Compl. ¶ 12; Mortgage Assignments 21.)

The Note was also transferred to Plaintiff by the affixation of an allonge to the Note.  (Am.

Compl. ¶ 12; Note 17.)

The Borrowers failed to make monthly payments due on February 20, 2016, and on all

subsequent dates.[5]  On September 16, 2021, Plaintiff mailed notices of default addressed to the

---

commencing a foreclosure action because the RPAPL provisions that constrain a party's ability
to commence multiple foreclosure actions are "mortgagee specific and debt specific").

[5]  The Complaint and Plaintiff's memorandum of law both allege that the Borrowers
defaulted on January 20, 2016.  (*See* Am. Compl. ¶ 15; Pl.'s Mem. 1.)  The Court notes,
however, that the documents submitted in support of Plaintiff's motion suggest that the
Borrowers missed the payment due on February 20, 2016.  The affidavits submitted in support of
Plaintiff's motion state that "the loan is due for the payment due on February 20, 2016."  (Aff. of
John Ramer ("Ramer Aff.") ¶ 5, annexed to Decl. of Alan H. Weinreb ("Weinreb Decl.") as Ex.
C, Docket Entry No. 37-6; *see also* Suppl. Aff. of John Ramer ("Ramer Suppl. Aff."), Docket

Borrowers at their last known addresses (the "Default Notices").  (Am. Compl. ¶ 16; *see also* Notices of Default, Aff. of Mailing, & Proof of Filing Statements ("Mailed Notices & Proof of Filing") 24–31, 39, annexed to Am. Compl. as Ex. E, Docket Entry No. 26-1.)  The Default Notices informed the Borrowers that they owed a total of $216,719.72 in unpaid principal, interest, and late charges, and gave the Borrowers until October 16, 2021, to pay the debt in full. (Am. Compl. ¶¶ 16, 19; Mailed Notices & Proof of Filing 27.)  The Default Notices also informed the Borrowers that failure to correct the default by October 16, 2021, could result in acceleration of their loan, meaning that Plaintiff could "declare . . . the outstanding principal balance due under the Note, together with all accrued interest, . . .  immediately due and payable."  (Am. Compl. ¶ 16; Mailed Notices & Proof of Filing 26.)  Also on September 16, 2021, Plaintiff mailed ninety-day notices to the Borrowers at their last known addresses pursuant to RPAPL § 1304(1) (the "90-Day Notices").  (Am. Compl. ¶ 16; Mailed Notices & Proof of Filing 32–39.)  Pursuant to RPAPL § 1306, Plaintiff submitted certain information to the Superintendent of the New York State Department of Financial Services.  (Mailed Notices & Proof of Filing 40–41; *see also* Am. Compl. ¶ 16.)  The Borrowers did not respond to the Default Notices or the 90-Day Notices.  (Am. Compl. ¶ 18.)

>      **b.   Procedural background**

On January 25, 2022, Plaintiff filed the Complaint and the special summons required by RPAPL § 1320, and on January 23, 2023, filed an Amended Complaint.  (*See* Compl.; RPAPL § 1320 Special Summons, Docket Entry No. 1-2; Am. Compl.)  Defendants did not answer the

---

Entry No. 40 (same).)  In addition, a Statement of Account submitted in support of the motion suggests that the first missed payment occurred on February 20, 2016.  (Borrower Statement of Account, annexed to Ramer Suppl. Aff., Docket Entry No. 40.)  For purposes of deciding Plaintiff's motion, the Court relies on the February 20, 2016 date of default as set forth in the affidavits and the Statement of Account.

Amended Complaint or otherwise respond to this action.  Plaintiff requested a certificate of default as to all Defendants, and on August 22, 2023, the Clerk of Court entered default against them.  (Clerk's Entry of Default.)  On September 12, 2023, Plaintiff moved for default judgment, arguing that it has complied with applicable statutory requirements and is entitled to default judgment and an award of damages.  (Pl.'s Mot.; Pl.'s Mem.)

On February 7, 2024, and February 21, 2024, the Court directed Plaintiff to submit additional written materials in support of its assertions that it had complied with RPAPL § 1331, (Order dated Feb. 7, 2024), and to submit proof of compliance with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, (Order dated Feb. 21, 2024).  Plaintiff submitted materials in response to the Court's orders on March 13, 2024, and April 12, 2024.  (*See* Pl.'s Mot. to Supplement Pl.'s Mot. for Default J. ("Pl.'s Suppl. Mot."), Docket Entry No. 39; Ramer Suppl. Aff.)

## II.  Discussion

### a.  Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 137).  "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the

defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013).  However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party," *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)).  "Further, concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se*. . . .  Hence, as a general rule a district court should grant a default judgment sparingly . . . when the defaulting party is appearing *pro se*."  *Enron Oil Corp.*, 10 F.3d at 96.

"The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009)).  "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

### b.   Plaintiff has complied with all procedural and statutory requirements

Plaintiff has complied with applicable procedural and statutory requirements, including the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, and the notice and service provisions set

forth in Article 13 of the RPAPL.[6]  *See Com. Lender LLC v. 413 Greene Realty 2014 Corp.*, No. 22-CV-2910, 2023 WL 7000877, at *3 (E.D.N.Y. Sept. 7, 2023) ("[T]he [c]ourt must ensure that . . . [the p]laintiff took all the required procedural steps in moving for default judgment pursuant to Local Civ. R. 55.2(c) . . . ."), *report and recommendation adopted*, No. 22-CV-2910, (E.D.N.Y. Sept. 27, 2023).

### i.  Plaintiff has complied with the Servicemembers Civil Relief Act

Plaintiff has complied with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, which provides in pertinent part that before entering judgment in favor of the plaintiff, courts must "require the plaintiff to file . . . an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931(b)(1)(A); *see also Wilmington Sav. Fund Soc'y, FSB v. Fernandez*, --- F. Supp. 3d ---, ---, 2024 WL 219092, at *4 (E.D.N.Y. Jan. 22, 2024) (explaining that the Servicemembers Civil Relief Act "requires a plaintiff seeking a default judgment to file an affidavit stating whether the defendant is in the military service" (citing 50 U.S.C. § 3931)).

On March 13, 2023, Plaintiff filed an affirmation stating that it "conducted a department of defense manpower data center database search as to" each of the individual defendants, and that its searches "[did] not indicate that the defendants were or are in the military."  (Aff. of Alan H. Weinreb ("Weinreb Aff."), annexed to Pl.'s Suppl. Mot., Docket Entry No. 39-2.)  Plaintiff also produced reports from the Department of Defense demonstrating that none of the individual

---

[6] In addition, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.  (*See* Am. Compl. ¶¶ 2–8); *see Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019) ("[E]ven if no party raises the issue, courts have an obligation to consider subject matter jurisdiction *sua sponte*." (citation omitted)).

Defendants are in military service.[7]  Plaintiff has therefore sufficiently established compliance

with the Servicemembers Civil Relief Act.  *See ADI Glob. Distrib. v. Green*, No. 20-CV-3869,

2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (concluding that the plaintiff complied with

the Servicemembers Civil Relief Act by providing "a declaration from . . . counsel stating that

[the plaintiff] searched the Department of Defense's website and obtained a Status Report

pursuant to the Servicemembers Civil Relief Act"), *report and recommendation adopted*, 2023

WL 3346499 (E.D.N.Y. May 10, 2023); *Wilmington Sav. Fund*, 2024 WL 219092, at *4

("Adequate proof [of compliance with the statute] might consist of a report from the Department

of Defense's website obtained after the defendant's default certifying that the defendant is not in

active military service." (citing *ADI Glob.*, 2023 WL 3355049, at *3)).

### ii.   Plaintiff has complied with the RPAPL's requirements

Plaintiff has complied with each of the statutory requirements.  "To prevail in a mortgage

foreclosure action under New York law, the plaintiff must satisfy the common law elements and

the statutory requirements set forth in Article 13 of the [RPAPL]."  *See Wilmington Sav. Fund*,

2024 WL 219092, at *5 (citing *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 44 (N.D.N.Y.

2015)).  Article 13 requires the plaintiff in a residential foreclosure action to: (1) serve a specific

notice on the defendants along with the summons and complaint, *see* RPAPL § 1303; *U.S. Bank

Nat'l Ass'n v. 22-33 Brookhaven, Inc.*, 194 N.Y.S.3d 543, 551 (App. Div. 2023) ("Proper service

of the notice required by RPAPL [§] 1303 is a condition precedent to the commencement of a

foreclosure action, and it is the plaintiff's burden to show compliance with that statute." (quoting

*U.S. Bank Nat'l Ass'n v. Ahmed*, 106 N.Y.S.3d 78, 82 (App. Div. 2019))); (2) serve a specific

---

[7]  (*See* Dep't of Def. Status Rep. as to Aljo Durkovic, annexed to Weinreb Aff., Docket Entry No. 39-2; Dep't of Def. Status Rep. as to Robert McQueen, annexed to Weinreb Aff., Docket Entry No. 39-2; Dep't of Def. Status Rep. as to Rhonda McQueen, annexed to Weinreb Aff., Docket Entry No. 39-2.)

notice at least ninety days before commencing the foreclosure action, *see* RPAPL § 1304; *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 338 (2d Cir. 2021) ("Proper service of RPAPL [§] 1304 notice on the . . . borrowers is a condition precedent to the commencement of a foreclosure action." (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 961 N.Y.S.2d 200, 202 (2013))); (3) file certain information with the Superintendent of the New York State Department of Financial Services within three business days of mailing the ninety-day notice required by RPAPL § 1304, *see* RPAPL § 1306; *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 535 (2d Cir. 2020) ("Section 1306(1) provides as a precondition of a foreclosure action that a plaintiff must file 'the information required by [§ 1306(2)]' within three business days of mailing a § 1304 notice." (alteration in original) (quoting RPAPL § 1306(1))); (4) serve a special summons once the foreclosure action has been filed, *see* RPAPL § 1320; and (5) file a notice of pendency of the action in the clerk's office in the county where the subject property is located, *see* RPAPL § 1331; *U.S. Bank Tr., N.A. v. Green-Stevenson*, 174 N.Y.S.3d 124, 126 (App. Div. 2022) ("RPAPL [§] 1331 provides . . . that at least 20 days before a final judgment directing a sale in a mortgage foreclosure action, the plaintiff must file a 'notice of the pendency of the action.'" (quoting *Nationwide Mortg. LLC v. Dessingue*, 63 N.Y.S.3d 612, 614 (App. Div. 2017))).

First, Plaintiff filed affidavits of service indicating that it served the specific notices required by RPAPL § 1303 on the Borrowers.[8]  Second, Plaintiff served the ninety-day notice required by RPAPL § 1304.  (*See* Mailed Notices & Proof of Filing 32–39 (proof that Plaintiff mailed the ninety-day notices required by RPAPL § 1304 to the Borrowers).)  Third, Plaintiff

---

[8]  (*See* Affs. of Service, Docket Entry Nos. 32–34 (affirming that Plaintiff's process server a "1303 [Notice] in bold fourteen-point type and printed on colored paper . . . and the title of the notice printed in bold twenty-point type in compliance with RPAPL § 1303").

filed the requisite information with the New York State Department of Financial Services.[9]

Fourth, Plaintiff served the special summonses required by RPAPL § 1320 on the Borrowers

when it commenced this action.  (*See* RPAPL § 1320 Special Summons; Affs. of Service, Docket

Entry Nos. 9–11, 13.)  Fifth, pursuant to RPAPL § 1331, Plaintiff filed a notice of pendency with

the Nassau County Clerk's office on February 28, 2022.  (Weinreb Decl. ¶ 4; Notice of

Pendency, annexed to Pl.'s Suppl. Mot., Docket Entry No. 39-1.)

> ### c.   Plaintiff is entitled to a judgment of foreclosure and sale

Plaintiff argues that it has established a prima facie case for foreclosure by providing "a

copy of the Note, the Mortgage[,] and evidence of the default."  (Pl.'s Mem. 5 (citing *Regency*

*Sav. Bank, FSB v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462 (S.D.N.Y. 2001)).)  In

addition, Plaintiff seeks the appointment of a referee to sell the property in accordance with the

judgment of foreclosure and sale.  (Weinreb Decl. 3; Proposed J. of Foreclosure & Sale

("Proposed J.") 2–4, Docket Entry No. 37-3.)

"In a mortgage foreclosure action under New York law, a lender must prove (1) the

existence of a debt, (2) secured by a mortgage, and (3) a default on that debt."  *U.S. Bank, N.A. v.*

*Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012) (first citing *R.B. Ventures, Ltd. v.*

*Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997); and then citing *United States v. Freidus*, 769 F. Supp.

1266, 1277 (S.D.N.Y. 1991)); *Windward Bora LLC v. Zinnar*, No. 19-CV-4533, 2023 WL

9001537, at *4 (E.D.N.Y. Dec. 28, 2023) (same); *see also Axos Bank v. Ottomanelli*, No. 23-CV-

941, 2023 WL 8567503, at *2 (E.D.N.Y. Dec. 11, 2023) ("Under New York law, 'the plaintiff in

---

[9]  (*See* Mailed Notices & Proof of Filing (proof of filing statements reflecting information that Plaintiff filed with the New York State Department of Financial Services pursuant to RPAPL § 1306).)

an action to foreclose a mortgage [must] demonstrate: "the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment."'" (alteration in original) (quoting *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018))). When the plaintiff has established a prima facie case of foreclosure and sale, courts have appointed a referee to conduct the sale of the property. *See, e.g.*, *Freedom Mortg. Corp. v. McLain*, No. 23-CV-1309, 2023 WL 8473948, at *3 (E.D.N.Y. Oct. 12, 2023) ("The appointment of a referee should be allowed where the plaintiff has 'established a *prima facie* case[.]'" (alteration in original) (quoting *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014))), *report and recommendation adopted*, 2023 WL 7320257 (E.D.N.Y. Nov. 7, 2023); *Windward Bora, LLC v. Brito*, No. 19-CV-4073, 2020 WL 7296859, at *2 (E.D.N.Y. Dec. 11, 2020); *Avail 1 LLC v. Latief*, No. 17-CV-5841, 2020 WL 5633099, at *1 (E.D.N.Y. Sept. 21, 2020); *PMB Tech. Servs., LLC v. Mazoureix*, No. 14-CV-4834, 2015 WL 5664823, at *1 (E.D.N.Y. Sept. 23, 2015).

Plaintiff has established that it is entitled to a judgment of foreclosure and sale.  Plaintiff has produced a copy of the Note signed by Robert McQueen with an allonge reflecting a transfer of the Note to Plaintiff.  (Note 11–15, 17.)  Plaintiff has also produced a copy of the Mortgage signed by the Borrowers and made out to National City Bank, and documents showing that the Mortgage was assigned to Keyhole Capital on May 11, 2013, and subsequently assigned to Plaintiff on July 19, 2021.  (Mortgage 4–9; Mortgage Assignments 19–23.)  The Note, the Mortgage, and accompanying documents establish the existence of a debt owed by the Borrowers, and Plaintiff's ownership of the Note and Mortgage.  *See E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) ("[E]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is

sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (App. Div. 2009))); *Zinnar*, 2023 WL 9001537, at *5 (finding evidence that "PNC, the successor by merger to NCB, assigned the [m]ortgage to Keyhole" and that "Keyhole assigned the [m]ortage to [the p]laintiff," along with "[a]llonges affixed to the [n]ote," was sufficient to establish that the plaintiff owned the mortgage and note); *Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-CV-2288, 2022 WL 5432771, at *8 (E.D.N.Y. July 27, 2022) (finding that the plaintiff had "the right to enforce the . . . [m]ortgage" when it had "demonstrated possession of the [n]ote and accompanying [m]ortgage prior to the commencement of the instant action and ha[d] produced . . . all relevant assignment documents"); *Gustavia Home*, 321 F. Supp. 3d at 415 (finding that "copies of the [m]ortgage, [n]ote, allonges, and chain of assignments" was "evidence . . . that establishes a prima facie case of entitlement to judgment").

Plaintiff has also established the Borrowers' default.  In affidavits from its authorized signatory, John Ramer (the "Ramer Affidavits"), (*see* Ramer Aff.; Ramer Suppl. Aff.), Plaintiff explains that he has "access to the business records including the business records relating to the loan of [the Borrowers]" and has reviewed records relating to the Borrowers' loan.  (Ramer Suppl. Aff. ¶¶ 1–2; Ramer Aff. ¶¶ 1–2.)  In addition, the Borrowers' "loan is due for the payment due on February 20, 2016" and "[a]s of September 11, 2023, the outstanding unpaid principal balance is $156,173.68."  (Ramer Suppl. Aff. ¶ 5; Ramer Aff. ¶¶ 5, 7 ("[T]he date of default is February 20, 2016.")); *see also Axos Bank*, 2023 WL 8567503, at *2 (noting that declaration submitted in support of default motion "confirm[ed] that the [b]orrower defaulted on his obligations under the [l]oan [d]ocuments by failing to make required payments as they came due"); *U.S. Bank Nat'l Ass'n v. Whittle*, No. 22-CV-5484, 2023 WL 8189938, at *3 (E.D.N.Y.

Nov. 27, 2023) ("Plaintiff submitted evidence of [b]orrowers' default in the form of an affidavit
. . . which states that [b]orrower defaulted on the [a]greements on September 1, 2021.");
*Gustavia Home*, 321 F. Supp. 3d at 415 (concluding that affidavit containing the statement that,
based on the affiant's "own knowledge and from reviewing [the p]laintiff's business records . . .
that defendant failed to cure the default" was sufficient evidence to establish borrowers' default
(internal quotation marks and citation omitted)).

Accordingly, Plaintiff has established that it is entitled to a judgment of foreclosure and
sale. *See Squadron VCD*, 504 F. App'x at 32 ("In a mortgage foreclosure action under New
York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a
default on that debt." (citations omitted)).

The Court also enters a default judgment against Durkovic and Wellcorp.  Although
properly served, neither party answered the Amended Complaint.  The Amended Complaint
alleges that Durkovic, as Trustee of the McQueen Family Trust, is the "owner of record" of the
Property, while Wellcorp "is a judgment creditor by virtue of [a] judgment filed against the
[B]orrower(s) and/or property, which is subordinate to Plaintiff's Mortgage."  (Am. Compl. ¶¶ 3,
6; *see also* Deed 43–45; Tr. of Judgment 47.)  Plaintiff's allegations are sufficient to establish
that Plaintiff is entitled to the entry of default judgment against them.  *See Zinnar*, 2023 WL
9001537, at *6 (granting default judgment against nominal defendants where the complaint
alleged that they were the "owner of record" or "judgment creditors" but did not seek relief
against them); *Windward Bora LLC v. Ingber*, No. 21-CV-3308, 2023 WL 6385815, at *4
(E.D.N.Y. Sept. 29, 2023) (finding that the plaintiff "sufficiently established that [a nominal
defendant was] a non-mortgagor [d]efendant with nominal liability" where the complaint
"contain[ed] well-pleaded allegations of nominal liability" and the plaintiff submitted "a

judgment against [the borrower defendant] in favor of [the nominal defendant]"); *Golden Bridge LLC v. Queensway Builders LLC*, No. 22-CV-3551, 2023 WL 5533352 , at *8 (E.D.N.Y. Aug. 10, 2023) (recommending that the district court grant default judgment against nine nominal defendants where the complaint alleged that they "ha[d], or claimed to have or may claim to have, some interest in or lien upon the [subject property]" that was subordinate to the plaintiff's interest), *report and recommendation adopted*, 2023 WL 5533494 (E.D.N.Y. Aug. 28, 2023); *Gustavia Home, LLC v. Fatima Corporan*, No. 16-CV-2333, 2017 WL 9511072, at *3 (E.D.N.Y. Jan. 31, 2017) (recommending default judgment against nominal defendants where the complaint alleged only that they had "filed a lien or judgment against the [s]ubject [p]roperty" (citation omitted)), *report and recommendation adopted*, 2017 WL 1497949 (E.D.N.Y. Apr. 26, 2017).

    **d.   Damages**

    Plaintiff contends that it is owed $242,887.68, consisting of an unpaid "principal balance in the amount of $156,173.68," unpaid "interest in the amount of $84,691.76" as of April 5, 2024, and "unpaid late charges in the amount of $2,022.24."[10]  (Ramer Suppl. Aff. ¶¶ 5–9.)  In support of its claim for damages, Plaintiff submits the Ramer Affidavits, Loan Master Reports from Keyhole Financial Services (the "Keyhole Loan Report") and FCI Lender Services (the "FCI Loan Report"), and a Statement of Account from FCI Lender Services (the "FCI Account

---

        [10]  When Plaintiff filed its motion on September 12, 2023, it originally sought damages totaling of $237,042.00, consisting of $156,173.68 in unpaid principal balance, $78,846.08 in unpaid interest as of September 11, 2023, and $2,022.24 in unpaid late charges.  (*See* Pl.'s Mem. 7–8; Weinreb Decl. ¶ 6; Ramer Aff. ¶ 7.)  On April 12, 2024, Plaintiff filed additional documentation in support of its request for damages in which it requests an updated total amount of $242,887.68, reflecting additional interest that accrued between September 11, 2023, and April 5, 2024.  (*See* Ramer Suppl. Aff. ¶¶ 8–9.)

Statement").[11]  Plaintiff contends that it has reviewed and examined "business records[,] including the business records relating to the loan of [the Borrowers]," has included a description of Plaintiff's damages, (Ramer Aff. ¶¶ 1–2, 5–8; Ramer Suppl. Aff. ¶¶ 1–2, 5, 7–9), and based on these submissions, it "has met its burden of establishing a valid basis for its damages," (Pl.'s Mem. 8).

The Court finds that an evidentiary hearing is unnecessary and enters judgment in Plaintiff's favor in the amount set forth below.

### i.  Unpaid principal balance

Plaintiff's request for entry of judgment for the unpaid principal balance of $156,173.68 is supported by the terms of the Mortgage, which provides that upon default, the holder may declare that "all or any part of the agreed fees and charges, accrued interest and principal" are "immediately due and payable."  (Mortgage 7.)  In addition, Ramer avers that "[t]he loan is due for the payment due on February 20, 2016," and that "[a]s of September 11, 2023, the outstanding unpaid principal balance is $156,173.68."  (Ramer Aff. ¶ 5; Ramer Suppl. Aff. ¶ 5.) The FCI Account Statement also reflects that at the time of the Borrowers' default on February 20, 2016, the outstanding principal balance was $156,173.68, and that the Borrowers did not make further payments on the loan between the date of their default and March 14, 2024.  (FCI Account Statement 1–4; *see also* FCI Loan Rep. 3 (reflecting a "Current Balance" of $156,173.68 as of April 12, 2024).)  Based on the documentation submitted, the Court awards Plaintiff $156,173.658 in unpaid principal balance.  *See Ingber*, 2023 WL 6385815, at *4–5 (awarding the plaintiff $63,527.39 in unpaid principal balance where the "[n]ote and [m]ortgage

---

[11]  (*See* Ramer Aff.; Ramer Suppl. Aff.; Keyhole Loan Rep. 1, annexed to Ramer Suppl. Aff., Docket Entry No. 40; FCI Loan Rep. 1, annexed to Ramer Suppl. Aff., Docket Entry No. 40; FCI Account Statement 1, annexed to Ramer Suppl. Aff., Docket Entry No. 40.)

provide[d] that [the defendants] agreed to pay [the plaintiff] a principal sum of $69,000.00" and an affidavit submitted by the plaintiff established that, as of the date of default, "the unpaid principal under the [n]ote was $63,527.39"); *U.S. Bank Nat'l Ass'n v. Harilal*, No. 19-CV-7034, 2022 WL 16754569, at *7 (E.D.N.Y. Aug. 30, 2022) (recommending an award of $309,592.09 in unpaid principal balance where the plaintiff "submitted documentation," including loan statements and sworn affidavits, which "assert[ed] that, at the time of [the borrower's] default . . . the [n]ote had an unpaid interest-bearing principal balance of $309,183.83, and an unpaid non-interest-bearing principal balance of $408.26"), *report and recommendation adopted*, 2022 WL 4596734 (E.D.N.Y. Sept. 30, 2022).

### ii.   Interest on the unpaid principal balance

Plaintiff seeks interest in the amount of $84,691.76, consisting of unpaid interest that accrued from January 20, 2016, to April 5, 2024, based on an interest rate of 6.600%.  (Ramer Suppl. Aff. ¶¶ 7–8.)

Although the Note appears to set a variable interest rate, it provides that on the last business day of the Borrowers' ten-year "Draw Period," "[a]ny amount outstanding other than [Fixed Rate Locks] will be converted to a Fixed Rate Lock balance . . . and will be subject to finance charges for a Fixed Rate Lock based on a 240 month Repayment Term for balances of $10,000 or more."  (Note 12.)  The Note also establishes how the interest rate is calculated for a Fixed Rate Lock based on a 240-month repayment term.[12]

---

[12]   The interest rate for a Fixed Rate Lock based on a 240-month repayment term is calculated by adding an "FRL Margin" of 5.250% to the "FRL Index," which is defined as "the highest daily rate for 3 year Treasury notes with constant maturities from the 1st business day through the 11th [or] last business day of the [preceding] calendar month, . . . rounded, if necessary, to the nearest 0.125%."  (Note 11–12.)

Because the Note is dated June 16, 2005, and provides for a ten-year Draw Period, the Borrowers' Draw Period ended on or about June 16, 2015.[13]  (*Id.* at 11.)  Thus, to determine the interest rate at the end of the Borrowers' Draw Period in June of 2015, the Court looks to the "highest daily rate for 3 year Treasury notes with constant maturities from the first through the 11th [or] last business day of the [preceding] calendar month," and rounds that number to the nearest 0.125%.  (*Id.*)  The Court calculates the FRL Index to be 1.000%,[14] and adds the FRL Index to the FRL Margin of 5.250% to arrive at an interest rate of 6.250%.[15]  The Court calculates a *per diem* interest rate of $26.74 by multiplying the interest rate (6.250% or 0.0625) by the amount of unpaid principal balance ($156,173.68), and dividing that number by 365 days. The Court then multiplies the *per diem* interest rate of $26.74 by 2,999, *i.e.*, the number of days from January 20, 2016, to April 5, 2024, to arrive at a total unpaid interest of $80,193.26.[16] Accordingly, the Court awards Plaintiff a total of $80,193.26 in unpaid interest that accrued

---

[13]  There is no evidence that the Borrowers' Draw Period was extended or renewed.

[14]  The highest daily rate for the first through eleventh business days of the preceding calendar month, May of 2015, was 1.03% according to the Federal Reserve Statistical Release H.15.  *See generally Selected Interest Rates (Daily) – H.15*, Fed. Rsrv., https://www.federalreserve.gov/releases/H15/default.htm.

[15]  Plaintiff asserts that, "[p]ursuant to the terms of the Loan, at the time of default the interest rate was, and continues to be, 6.600%."  (Ramer Aff. ¶ 7; Ramer Suppl. Aff. ¶ 8; *see also* Pl.'s Letter in Resp. to Aug. 1, 2022 Status Rep. Order, Docket Entry No. 20.)  In addition, the FCI Loan Report and FCI Account Statement each state that the interest rate on the Note is 6.600%.  (FCI Loan Rep. 1; FCI Account Statement 1.)  However, none of Plaintiff's supporting documents explain how it arrived at the 6.600% interest rate based solely on the terms of the Note.  Accordingly, in calculating the amount of unpaid interest that the Borrowers owe, the Court applies the 6.250% interest rate as calculated above rather than the 6.600% rate supplied by Plaintiff.

[16]  The Court calculates interest from January 20, 2016, because "the date of default is February 20, 2016, and interest pursuant to the Loan is paid in arrears."  (Ramer Suppl. Aff. ¶ 8.)

between January 20, 2016, and April 5, 2024.  *See ARCPE Holding, LLC v. 9Q4U5E LLC*, No.
19-CV-6417, 2022 WL 2467085, at *3 (E.D.N.Y. Apr. 15, 2022) (applying a similar
methodology as the plaintiff to calculate unpaid interest on a variable rate loan and awarding the
amount calculated by the court).

### iii.   Late charges

Plaintiff seeks late charges totaling $2,022.24 in late fees from February 20, 2016 to
September 11, 2016.  (Ramer Aff. ¶ 8; Ramer Suppl. Aff. ¶ 9; *see also* FCI Loan Report 1; FCI
Account Statement 1.)  The Note specifies that the holder is entitled to a late payment fee "of the
greater of 10% of the unpaid minimum payment or $40" if payment is not received within ten
days of the due date.  (Note 12.)  The Note further provides that, for Fixed Rate Locks, the
minimum payment is the "amount that is sufficient to pay off the [Fixed Rate Lock] including
the [Fixed Rate Lock] Advance Fee, at the fixed rate applicable to that [Fixed Rate Lock]
calculated based on the" applicable number of monthly payments.[17]  (*Id.* at 13.)

Plaintiff's submissions do not identify the months in which the Borrowers incurred late
charges, nor explain how Plaintiff calculated the amount of unpaid late charges based on the
terms of the Note.  Accordingly, the Court denies without prejudice Plaintiff's request for unpaid
late charges in the amount of $2,022.24.  *See Freedom Mortg. Corp. v. Phillip*, No. 19-CV-1215,
2020 WL 9812917, at *5–6 (E.D.N.Y. Mar. 2, 2020) (recommending the award of unpaid
principal balance and unpaid interest, but recommending that the "plaintiff's request for . . . late
charges . . . be denied without prejudice with leave to supplement its request" when the plaintiff
"fail[ed] to identify the months [the] defendants allegedly incurred these late charges and fail[ed]

---

[17]  Pursuant to the Note, the "automatic" repayment term is twenty years, or 240 months.
(Note 13.)

to provide supporting documents"), *report and recommendation adopted*, No. 19-CV-1215

(E.D.N.Y. Apr. 8, 2020).

**III.  Conclusion**

For the foregoing reasons, the Court grants Plaintiff's motion for a default judgment

against the Borrowers, Durkovic, and Wellcorp.  The Court also grants Plaintiff's motion for

damages in the amount of $236,366.94, consisting of $156,173.68 for the unpaid principal

balance due on the Note and $80,193.26 in unpaid interest; and interest accruing at a rate of

$26.74 per day from April 6, 2024 until the Court enters judgment.  Plaintiff shall propose a

referee for the foreclosure and sale of the Property within fourteen days of this Memorandum

and Order.

Dated: July 18, 2024
       Brooklyn, New York

                                    SO ORDERED:


                                    ____S/MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge